IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02192-NRN

RANDY JAMES RAYGOR,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Randy James Raygor was not disabled for purposes of the Social Security Act for the period from November 19, 2013 through August 22, 2017, the date of the decision. (AR[1] 40-41.) Mr. Raygor has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #11.)

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##9, and 9-1 through 9-15.)

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985). Ultimately, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Mr. Raygor "has the following severe

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The

2

combination of impairments: schizoaffective disorder; depression; anxiety; and, substance (cannabis) abuse." (AR 34.) The ALJ found that these "medically determinable impairments cause more than minimal functional limitations on basic work-related activities and are considered severe." (AR 34.)

The ALJ then determined at step three that Mr. Raygor "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 34-35.) Because she concluded that Mr. Raygor did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Mr. Raygor has the following residual functional capacity ("RFC"):

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple unskilled work activities; can solve problems and can perform work without distracting others or being distracted by others; can interact appropriately with coworkers, supervisors and the public but cannot perform tasks requiring teamwork; and, can maintain attendance in order to perform sustained work activities.

(AR 35.)

The ALJ concluded that Mr. Raygor had past relevant work as a cook helper. (AR 39.) At step five, the ALJ found that, in comparing Mr. Raygor's residual functional capacity with the physical and mental demands of being a cook helper, Mr. Raygor was able to perform as a cook helper as it is generally performed in the national economy, and that there are other jobs existing in the national economy that Mr. Raygor is able to perform. (AR 39.) Accordingly, Mr. Raygor was deemed not to have been under a disability from the alleged onset

---

claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

date of November 19, 2013, through August 22, 2017, the date of the decision. (AR 40-41.)

## Analysis

Mr. Raygor argues that the ALJ's decision should be reversed because she improperly weighed the medical opinion evidence and improperly assessed the consistency of Mr. Raygor's statements with the medical evidence. The Court agrees.

I.  **Medical Opinion Evidence**

An ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight" she assigns to them. *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The applicable regulations governing the consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c). Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). *See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

4

The evaluation of a treating source's opinion is a two-step process. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id*. Second,

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Id*. The factors the ALJ must consider are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

5

Mr. Raygor argues that the ALJ rejected the opinion of his treating physician in favor of two non-examining physicians' opinions, while engaging in improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)

Here, the ALJ considered opinions from three sources: treating psychiatrist Dr. Leone (AR 705-18); Dr. Robert Pelc, Ph.D (AR 795-799), who answered medical interrogatories for the ALJ, and Dr. Gayle Frommelt, Ph.D., the State agency's psychological consultant (AR 90-100 & 102-112). The Court will address these opinions below.

### A. Dr. Leone

Mr. Raygor argues Dr. Leone's opinion was entitled to deference because he was Mr. Raygor's treating physician. Dr. Leone was Mr. Raygor's treating physician from 2014 through 2017,[3] and signed two separate reports on April 24,

---

[3] Mr. Raygor saw Dr. Leone off and on from April of 2014 through the date of Dr. Leone's reports in April of 2017. Mr. Raygor left Boulder for a period of months at the end of 2015 and early 2016, so he was not continuously in the care of Dr. Leone. This should not negatively impact the weight of Dr. Leone's report. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("Penalizing an individual suffering from mental impairments like bipolar disorder for failing to

6

2017. One report addressed Mr. Raygor's "Schizophrenia, Paranoid and Other Psychotic Mental Disorders" (AR 705) and the second addressed his "Affective Disorders." (AR 711.) These reports are forms that Dr. Leone was asked to fill out, and each report states "This document only concerns psychotic mental disorders. Other impairments and limitations resulting from a combination of impairments should be considered separately." (AR 706 & 712.) The ALJ found fault with Dr. Leone's "opinion," describing it as "somewhat internally inconsistent" because he found marked deficits in social functioning and maintaining concentration, persistence and pace in one report while finding moderate functional limitations with regard to work related mental activities in another report. (AR 35.) The ALJ also found that the report failed to address the impact of "the claimant's well-documented and admitted substance use on his overall mental functioning." (AR 35.)

An ALJ is required to go further to examine the record of a treating physician's actual treatment of a claimant to determine whether the evidence supported the limitations endorsed in his opinion. *Phillips v. Colvin*, 67 F. Supp. 3d 1286, 1290–91 (D. Colo. 2014). The ALJ did not do that with any specificity here. Dr. Leone's reports are not inconsistent, but rather deal with two separate diagnoses, assigning symptoms and limitations differently based on the specific disorder addressed in the report. This is evidenced by the fact that Dr. Leone's comments at the end of each report are different. (AR 710 & 716.) A review of Dr.

---

seek treatment or take medication is a questionable practice.") (quotation omitted).

7

Leone's treatment notes, as well as those of other providers at Mental Health Partners, reveals there is consistent, documentary evidence to support Dr. Leone's assessment of Mr. Raygor's limitations, beginning with Mr. Raygor's early visits to Mental Health Partners, in which his provider notes that despite being homeless and jobless, Mr. Raygor continued to focus on how to achieve physical intimacy. (AR 327.) On March 29, 2017, after nearly two years of treatment at Mental Health Partners, Mr. Raygor's provider assessed Mr. Raygor's progress as a 2 out of 10, with 10 being complete. (AR 741-42.)

The ALJ also found that Dr. Leone's reports did not address the impact of Mr. Raygor's substance abuse. But, a review of Dr. Leone's treatments notes indicates that he did address Mr. Raygor's substance abuse, noting that it is "unclear how his substance abuse is affecting mania symptoms." (AR 94.) The fact that the impact is unclear to Dr. Leone does not mean it was not considered, only that he could not draw a conclusion about its impact. Importantly, the same report that the ALJ quoted to support her conclusion that Mr. Raygor's substance abuse needed to be addressed also indicated that Mr. Raygor's schizoaffective disorder diagnosis is not impacted by substance abuse. (AR 673.) The Court finds that the ALJ did not provide legitimate reasons for discounting, or properly account for substantial evidence in the record that supports, Dr. Leone's opinion as is required before a treating physician's opinion can be discounted or rejected. In light of the record as a whole and the factors to be considered in evaluating a treating physician's opinion, and as discussed in more detail below, the reports of

nonexamining physicians do not amount to "substantial evidence" contrary to Dr. Leone's report.

### B. Dr. Pelc and Dr. Frommelt

It appears the ALJ afforded great weight to one of two assessments prepared by non-treating professionals: Dr. Robert Pelc, Ph.D, who completed medical interrogatories on June 10, 2017 (AR 795.) The ALJ referred to Dr. Pelc's opinion as "better reasoned and better supported" than the opinion of Dr. Leone. (AR 35.) The ALJ found Dr. Pelc's opinion consistent with the March 25, 2015 opinion of Dr. Frommelt , the state agency's psychological consultant. (AR 37.) Dr. Pelc found that Mr. Raygor had severe impairment of schizoaffective disorder and noted cannabis abuse and "possible" use of hallucinogens. (AR 795.) Dr. Pelc concluded that Mr. Raygor had moderate degree of limitations in understanding, remembering or applying information, concentrating, persisting or maintaining pace, and adapting or managing oneself, and moderate to marked limitation interacting with others. (AR 796.) The ALJ stated that Dr. Pelc concluded that Mr. Raygor had only moderate limitations interacting with others. (AR 35) However, the record shows that Dr. Pelc indicated that Mr. Raygor's limitations were moderate to marked. (AR 799.) This distinction strikes the Court as significant, given that Dr. Leone also found Mr. Raygor to have marked limitations, but the ALJ discounted Dr. Leone's reports as inconsistent with Dr. Pelc's.

With respect to the issue of substance abuse, Dr. Pelc's opinion acknowledges Mr. Raygor's substance abuse in a notation that does not refer to

medical evidence or explain how the substance abuse impacted Mr. Raygor's impairments. (AR 795.) Dr. Frommelt also includes a reference to Mr. Raygor's marijuana use and "recent LSD use" in her assessment of Mr. Raygor as "partially credible" on the issue of his symptoms. (AR 95.) This is improper, and is evidence that Dr. Pelc and Dr. Frommelt's reports are inconsistent with each other in how they assess the impact of Mr. Raygor's substance abuse. *See* SSR-13p ("In evaluating an individual's symptoms, adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.").

Finally, Dr. Pelc's report is no more thorough than Dr. Leone's and, in fact, fails to separately identify or address Mr. Raygor's anxiety/depression, which Dr. Leone does. (AR 795-99.) Dr. Pelc never actually saw, examined or treated Mr. Raygor, as opposed to Dr. Leone, who examined him repeatedly over a course of years.

### C. The ALJ's Weighting of the Medical Opinions

An ALJ is free to assign more weight to the opinion of a non-examining physician so long he provides a "legally sufficient explanation for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."). Here, there is significant evidence in the record, which contains hundreds of pages of medical records, reflecting Mr. Raygor's history of debilitating mental health issues.

The ALJ should have first looked to see if Dr. Leone's opinion was well supported by medically acceptable and clinical laboratory techniques before looking at the evidence in the record to see if the opinion was consistent with other substantial evidence in the record. *See Watkins*, 350 F.3d at 1300 (noting that the analysis for determining whether a treating physician's opinion is controlling is sequential, requiring the ALJ to first consider whether the opinion is well-supported by medically acceptable and clinical laboratory techniques . . . and then confirm that the opinion is consistent with other substantial evidence in the record.") (citing SSR 96-6p). The ALJ did not do this. Had she done her analysis in the proper order, she would have concluded that considering the record as a whole, Dr. Leone's reports were consistent with other substantial evidence in the record, and would not have assigned greater weight to the medical opinion of Dr. Pelc, a consultant retained by the ALJ to review the records and answer specific interrogatories. Notably, the form used by Dr. Pelc is not the same form as that of Dr. Leone. (Compare AR 705 & 711 with 795.)

It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to just one position while ignoring other evidence. *See Hardman*, 362 F.3d at 681; *Clifton*, 79 F.3d at 1010; *Briggs*, 248 F.3d at 1239.

As an example of improper "picking and choosing," the ALJ relied on the February 15, 2016 opinion of Gerald Bennett, Licensed Certified Social Worker at Mental Health Partners, in the form of a "DSM-5 Diagnosis" (AR 673) when she noted that Mr. Raygor's cannabis use disorder included a "need for markedly

increased amounts of MJ to achieve intoxication or the desired effect." (AR. 38) The same report also indicated that Mr. Raygor's primary diagnosis of schizoaffective disorder, bipolar type, "is not attributable to the effects of a substance (e.g., a drug of abuse, a medication) or another medical condition," and, more importantly, states that Mr. Raygor was improved "in that he is contacting for safety at this time." *Id.* Nothing in that report indicated that Mr. Raygor's mental health was improving to the extent the ALJ implies it was in her opinion.

The Court finds it troubling that the ALJ assigned little, if any, weight to Dr. Leone's opinion, without acknowledging he had been treating Mr. Raygor since 2014. As another court in this district has noted:

> An overly formulaic application of appellate standards in social security appeals can lead to occasions where opinions of consultants and agency record reviewers who have no relationship with the real person are weighted greater than the opinions of treating physicians, particularly when the treating physician has been treating the claimant over a period of time.

*Fleming v. Colvin*, 218 F. Supp. 3d 1242, 1250 (D. Colo. 2016) (concluding that the ALJ "erred in picking and choosing" among the various opinions of the claimant's mental health providers, "rejecting some and according partial weight to others. Their care and consideration of [the claimant's] mental and physical health status for a period of years deserves better."). *See also Doyal*, 331 F.3d at 762; *Williams v. Bowen,* 844 F.2d 748, 757 (10th Cir. 1988) ("[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant."). The

12

Court finds that none of the reasons stated by the ALJ substantiates her decision to afford minimal weight to Dr. Leone's opinion.

## II. Mr. Raygor's Subjective Complaints

Finally, the Court must address the ALJ's determination that Mr. Raygor's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 37.) The ALJ noted that Mr. Raygor claims that he has been unable to work since November 19, 2013 due to mental symptoms of depression and anxiety with panic attacks, as well as some psychotic symptoms including auditory hallucinations and paranoia, which affected his ability to perform past work. (AR 36.) The ALJ found that Dr. Pelc and Dr. Frommelt's reports were both consistent with Mr. Raygor's reported activities and work activity, while Dr. Leone's was not. (*Id.*)

In general, "credibility determinations are peculiarly the province of the finder of fact and should not be upset if supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995). The ALJ should expressly link her credibility assessment to specific evidence in the record. *Id.* at 910. See also *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Social Security Rule 16-3p sets out the requirements an ALJ must follow in making a determination about a claimant's credibility with respect to the symptoms a claimant alleges contribute to his disability. Here, the ALJ found that "the evidence generally corroborates" Mr. Raygor's sworn testimony, (AR 36), and that Mr. Raygor's medically determinable impairments could reasonably be

expected to produce Mr. Raygor's alleged symptoms. The ALJ then concluded that Mr. Raygor's statements about the intensity, persistence and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (AR 37) In particular, the ALJ noted that Mr. Raygor "denied having any problems with personal care and indicated that he is able to perform basic daily activities including cooking, cleaning and shopping." (AR 37.) The ALJ found that the evidence indicates that Mr. Raygor:

> can manage his own money and has hobbies including reading and playing video games . . . reports some socializing in terms of attending church, going to the library and shopping malls, talking on the telephone, and interacting with people in online networks . . . denies having any physical symptoms or limitations affecting his ability to work and said he can walk for miles.

(*Id.*)

From the ALJ's opinion, it looks like she gave great weight to Mr. Raygor's statements about things he could do despite his limitations while giving no weight to his statements about the limiting effects of his impairments. This type of analysis has been rejected by another court in this district as an "unfair characterization of the record." *See Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1174 (D. Colo. 2014). The ALJ did not specifically address how these activities support her conclusion that Mr. Raygor's limitations would not prevent him from attending work on a regular basis necessary to keep a job. *See Morgan v. Colvin,* 68 F. Supp. 3d 1351, 1357 (D. Colo. 2014) ("activities of daily living rarely translate well into a determination of what a claimant can do on a sustained basis in the workplace"); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("In order to engage in gainful activity, a person must be capable of performing on a

reasonably regular basis."). Finally, the ALJ also found that Dr. Pelc and Dr. Frommelt's reports were both consistent with Mr. Raygor's reported activities and work activity. (AR 36.) However, as explained above, the opinions of Dr. Pelc and Dr. Frommelt were not entitled to the weight given them by the ALJ. Instead, had the ALJ properly weighted Dr. Leone's opinion, Mr. Raygor's statements about his limitations would be consistent with the medical evidence.

The ALJ's reasoning for her finding ignores some significant uncontroverted facts in the record that should have been addressed. For example, Mr. Raygor was homeless for the duration of the pertinent time period. The record reflects that despite counseling that began in April of 2014, Mr. Raygor was not able to come up with a plan for addressing his financial needs. (AR 327 & 369.)

With respect to Mr. Raygor's ability to interact with others, he was fired for sexual harassment and kicked out of the library as the result of an altercation with the library's security guard. (AR 337.) Mr. Raygor also had an altercation with another person at the homeless shelter. (AR 331.) These incidents are not addressed and are inconsistent with the opinion of Dr. Pelc that Mr. Raygor was able to manage interactions at the shelter. (AR 796.)

The ALJ implies that Mr. Raygor's complaint about auditory hallucinations were not credible because one of the times he complained about them was the day after his disability hearing. (AR 38.) However, there are numerous references to auditory hallucinations throughout Mr. Raygor's medical records that the ALJ failed to acknowledge. (AR 357, 394, 651, 731-36, & 756.)

15

The ALJ noted that Mr. Raygor was advised that "medication was negatively impacting the client, even if it momentarily gave him 'escape.'" (AR 39.) However, this discussion was between Mr. Raygor and his therapist in the context of his isolated use of LSD. Mr. Raygor acknowledged that he used LSD and that it did lead to a hospitalization, but stated that he did not use LSD again after that. While the Court can see why the ALJ might find Mr. Raygor's testimony about drug use not credible, later medical records indicate Mr. Raygor tested negative for **any** drugs other than his prescribed medications when he was experiencing suicidal thoughts that required hospitalization. (AR 438, 488, & 637.)

The ALJ seems to base her findings on medical records that contain notations that Mr. Raygor appears "normal" when he is at his medical appointments.[4] However, these same records indicate that Mr. Raygor continued to struggle with debilitating symptoms, including at least two attempts to commit suicide, and one hospitalization for suicidal ideation. (AR 382-43, 420-25, & 674-04.) Specifically, in a clinical progress note dated March 29, 2017 from Mental Health Partners, the practitioner indicated that Mr. Raygor's "progress on treatment goal to date" was at a level 2 out of 10, 10 being complete, and that while Mr. Raygor reported being "alright," he still had a general worry of being monitored and watched. (AR 741-42.) The ALJ's failure to acknowledge that the

---

[4] During the August 1, 2019 hearing before this Court, counsel for the Commissioner provided citations to multiple places in the record to support the ALJ's conclusion that Mr. Raygor was improving. However, post hoc attempts to fill in the blanks on the ALJ's behalf are improper. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

medical records reflect that Mr. Raygor's symptoms were sometimes severe and at other times less so has been rejected as "cherry picking" the record, which is improper. See *Gutierrez v. Colvin,* 67 F. Supp. 3d 1198, 1203–04 (D. Colo. 2014) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). See also 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00D(2) (acknowledging that level of functioning for claimant who suffers from mental impairments "may vary considerably over time").

Importantly, "all the ALJ's required findings must be supported by substantial evidence," and she must consider all relevant medical evidence in making those findings. *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005) (internal quotes and citations omitted). The ALJ concludes that "treatment records after the January 2016 episodes show the claimant to have improved symptoms with medication adjustments and compliance," citing "Exhibit 8F" as support for this conclusion. (AR 38.) Exhibit 8F contains treatment records from a facility in Johnstown, Colorado, and indicates that Mr. Raygor left the facility against medical advice. (AR 675-79.) The ALJ cites to "treatment records" without acknowledging that even though one part of the medical record may indicate that he seemed "normal," the other part of that same record indicates Mr. Raygor left the facility before his providers thought it was appropriate, which, by logical implication, indicates that he was not "normal." (AR 38.)

While the Court may not reweigh the evidence or try the issues de novo, it must "meticulously" examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007). The Court has meticulously examined the record as a whole, and finds that the substantiality test has not been met here. Given full weight, the opinion of Dr. Leone would have lead to a conclusion that Mr. Raygor's limitations meet the requirements for a finding of a disability. Dr. Leone's opinion and treatment notes, as well as the treatments notes of other providers at Mental Health Partners, are consistent with Mr. Raygor's complaints. Because the ALJ's rejection and weighting of these opinions contravene applicable legal standards, the Court cannot find her residual functional capacity or disability conclusions at Step 4 of the sequential analysis to be supported by substantial evidence.

Mr. Raygor seeks a reversal with an immediate award of benefits. The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Salazar v. Astrue*, 788 F. Supp. 2d 1231, 1244 (D. Colo. 2011). Here, additional fact finding would serve no useful purpose. The record, including medical opinions and medical evidence is fully developed, and, had it been weighed properly, would have resulted in a finding that Mr. Raygor was disabled and was entitled to benefits beginning November 19, 2013.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED and REMANDED** for an award of benefits.

Dated this 6th day of August, 2019.

BY THE COURT:

N. Reid Neureiter
U.S. District Court Magistrate Judge